UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-649(DSD/JMM)

Winthrop Resources Corporation,
a Minnesota corporation,

Plaintiff,

v. **ORDER**

Eaton Hydraulics, Inc., a
Delaware corporation, fka
Vickers, Inc.,

Defendant.

Jeffrey R. Ansel, Esq., Therese M. Marso, Esq., Julie A. Fishel,, Esq., Matthew R. McBride, Esq., Justice E. Lindell, Esq. and Winthrop & Weinstine, 3200 Minnesota World Trade Center, 30 East 7th Street, St. Paul, MN 55101, counsel for plaintiff.

Steven J. Kluz, Esq., Raphael T. Wallander, Esq. and Rider, Bennett, Egan & Arundel, 2000 Metro Center, 333 South 7th Street, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court on a motion for summary judgment and a motion for dismissal by plaintiff Winthrop Resources Corporation ("Winthrop") against defendant Eaton Hydraulics, Inc. "Eaton"). Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants Winthrop's motions.

FILED 4-23-02
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. ______
Deputy Clerk's Initials ______

**BACKGROUND**

Winthrop is a financial services company that specializes in leasing computer systems and other high tech equipment to a broad range of sophisticated corporate customers. (Gendler Aff. at ¶ 2.) Eaton is a Delaware corporation with worldwide locations. (Defendant's Counterclaim and Answer at ¶ 12.) This action arises from a contract dispute between Winthrop and Eaton.

On June 5, 1997, Winthrop and Eaton entered into a master lease agreement.[1] Under the agreement, Winthrop agreed to purchase equipment selected by Eaton and Eaton agreed to pay lease charges for use of the equipment. (Gendler Aff., Ex. A at ¶ 5; Ex. B. at ¶ 6.) The parties also signed lease schedules pursuant to the master lease agreement which identified the specific pieces of equipment leased by Eaton and the monthly lease charges due thereon. (Gendler Aff. at ¶ 7.) Together, the master lease agreement and the lease schedules constitute the "lease" between the parties. (Id.)

Winthrop asserts that Eaton has repeatedly defaulted on several provisions of the lease. On April 13, 2001, Winthrop filed suit against Eaton claiming (1) breach of contract, (2) action on account for scheduled lease charges that Eaton has failed to pay,

---

[1] Relationships between Winthrop and its customers are governed by a master lease agreement, individually negotiated with each customer. (Gendler Aff. at ¶ 4.) Winthrop supplements the master lease agreement with lease schedules which identify the specific items of leased equipment. (Id.)

late fees, applicable taxes and attorneys' fees and costs and (3) action in replevin for the leased equipment. In response, Eaton filed four counterclaims against Winthrop, alleging (1) breach of duty of good faith and fair dealing, (2) fraud, (3) breach of contract and (4) violation of the Minnesota Consumer Fraud Act. Winthrop now moves for summary judgment and to dismiss Eaton's counterclaims. For the reasons stated, the court grants both motions.

## DISCUSSION

### I. Winthrop's Motion for Summary Judgment

Winthrop moves the court to grant summary judgment, compelling Eaton to pay the amount due and owing under the lease. Because the undisputable facts establish that Eaton defaulted under the lease, the court grants Winthrop's motion.

#### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**B. Winthrop's Motion**

Winthrop correctly contends that it is entitled to summary judgment under the clear terms of the lease. Under Minnesota law, the construction and effect of a contract is a question of law, unless a contract's terms are ambiguous. Jacobs v. Pickands Mather & Co., 933 F.2d 652, 657 (8th Cir. 1991); Servais v. T.J. Mgmt. of Minneapolis, Inc., 973 F. Supp. 885, 892 (D. Minn. 1997). A

contractual term is ambiguous if it is susceptible to more than one interpretation. Brookfield Trade Ctr., Inc. v. County of Ramsey, 584 N.W.2d 390, 394 (Minn. 1998). The court determines whether a contract is ambiguous as a matter of law. Boat Dealers' Alliance, Inc. v. Outboard Marine Corp., 182 F.3d 619, 621 (8th Cir. 1999). Summary judgment is appropriate when a contract is unambiguous. See Lehman Bros. Kuhn Loeb, Inc. v. Clark Oil and Refining Corp., 739 F.2d 1313, 1317 (8th Cir. 1984).

In construing a contract, the court must "give effect to the intention of the parties as expressed in the language they used in drafting the whole contract." Art Goebel, Inc. v. North Suburban Agencies, 567 N.W.2d 511, 515 (Minn. 1997); see also Snyder's Drug Store, Inc. v. Sheehy Properties, Inc., 266 N.W.2d 882, 884 (Minn. 1978)("[L]eases should be interpreted no differently than other writings; that is, leases should be construed so as to give effect to the intention of the parties."). To ascertain the parties intentions, the court must interpret the contract as a whole and attempt to harmonize all the contract's terms. See, e.g., Jacobs, 933 F.2d at 657; Servais, 973 F. Supp. at 892; Chergosky v. Crosstown Bell, Inc., 463 N.W.2d 522, 525 (Minn. 1990); Brookfield, 584 N.W.2d at 394; SO Designs USA v. Rollerblade, Inc., 620 N.W.2d 48, 53 (Minn. Ct. App. 2000); Republic Nat'l Life Ins. v. Lorraine Realty Corp., 279 N.W.2d 349, 354 (Minn. 1979). The court must give the language of the contract its plain and ordinary meaning.

See, e.g., id.; Brookfield, 548 N.W.2d at 394; Servais, 973 F. Supp. at 892; SO Design USA, 620 N.W.2d at 52.

**1. The Lease Agreement**

In this case, the lease between Winthrop and Eaton is unambiguous. Under the lease, Winthrop contracted to allow Eaton to use Winthrop's equipment and Eaton contracted to pay lease charges to Winthrop no later than the first day of each month during the term of the lease. (Gendler Aff. at ¶ 5, Ex. A, ¶ 3; Ex. C.) If the lease charges are not timely made, Eaton must pay a late charge of one and one half percent of the amount then due. (Id. at Ex. A, ¶ 3.) The lease also explicitly requires Eaton to pay all applicable sales and property taxes imposed upon the equipment. (Id. at Ex. A, ¶ 4.) Eaton further agrees to maintain the equipment under a manufacturer's standard maintenance agreement during the term of the lease. (Id. at Ex. A, ¶ 8.) Additionally, the lease instructs Eaton to adhere to the following lease requirements in returning the equipment:

> Upon the termination of this Lease Agreement as to the Equipment on any Lease Schedule, Lessee shall prepare the Equipment for shipping, using the manufacturer's standard packing materials and will deliver and pay for such delivery of the Equipment to Lessor's loading dock, Minneapolis, Minnesota at the time designated in writing by Lessor.

(Id. at Ex. A, ¶ 7.)

Moreover, the lease provides Winthrop with clear remedies upon default. Section 17 of the lease defines an "event of default" as, among other things:

> (a) The nonpayment by Lessee of any lease charges when due, or the nonpayment by Lessee of any other sum required hereunder to be paid by Lessee which non-payment continues for a period of twenty (20) days after written notice thereof from Lessor.
>
> (b) The failure of Lessee to perform any other term, covenant or condition of this Lease Agreement, any Commitment Letter, any Lease Schedule or any other document, agreement or instrument executed pursuant hereto or in connection herewith which is not cured within twenty (20) days after written notice thereof from Lessor...
>
> (d) Any of Lessee's representations or warranties made herein [which are] false or misleading in any material respect. (Id. at Ex. A, ¶ 17.)

If Eaton defaults, the lease instructs that Winthrop may: (a) recover all accrued and unpaid rents and other items under the lease, (b) accelerate and cause to become immediately due and recover the present value of all rents and other amounts due and/or likely to become due, (c) cause to become immediately due and payable and recover under the unrecovered investment - defined as casualty loss value - in the equipment and/or (d) obtain possession of the equipment. (Id. at Ex. A, ¶¶ 18.) See also Minn. Stat. §§ 336.2A-523, 336.2A-528, 336.2A-529 (1991). These lease terms are clear and unambiguous.

### 2. Eaton's Breach of the Lease

The undisputable facts show that Eaton defaulted under Section 17 of the lease. Eaton failed to make required payments. (Gendler Aff., Ex. D.) For the calendar year 2001, Eaton made late payments on numerous occasions but has not paid the corresponding late charges. (Gendler Aff., Ex. I.) In addition, Eaton has not paid the property taxes due and owing on the equipment. (Gendler Aff., Ex. D.) Eaton does not dispute that Winthrop is entitled to the late charges and property taxes.

Moreover, Eaton failed to appropriately pack, ship and return the equipment as agreed. Eaton did not return the equipment in the manufacturer's standard packing materials, as required by paragraph 7 of the Lease. Eaton essentially concedes this fact when stating that it "return[ed] all computer equipment hastily and in a manner that simply did not permit sufficient time to plan, document, properly package or coordinate the return in a reasonable manner." (Def.'s Mem. in Opp'n to P.'s Mot. Summ. J. at 6.) Instead, the equipment was "stuffed ... in boxes ... with nothing but air to protect it." (See Fishel Aff., ¶ 6, Ex. E, pp. 47-54.) Eaton also admits that it failed to return some of the leased equipment, conceding that it has "returned approximately 85% of the equipment on 001R." (Def.'s Mem. in Opp'n to P.'s Mot. Summ. J. at 7.)

Further, the facts indisputably establish Eaton did not maintain the equipment as required under paragraph 8 of the lease.

(Gendler Aff., Ex. F at ¶ 12; Gendler Aff., Ex. G at ¶ 13.) Moreover, Eaton presents no persuasive evidence that it has "enter[ed] into and maintain[ed] in force during the entire term of this Lease Agreement, a manufacturer's Maintenance Agreement covering maintenance of the Equipment." (Gendler Aff., Ex. A at ¶ 8.) Because Eaton clearly defaulted under the lease, the court grants Winthrop's motion for summary judgment.

## II. Winthrop's Motion to Dismiss Eaton's Counterclaims

In response to Winthrop's complaint, Eaton filed counterclaims alleging fraud, a violation of the Minnesota Consumer Fraud Act, breach of duty of good faith and fair dealing and breach of contract. Winthrop moves to dismiss the counterclaims and the court grants Winthrop's motion.

### A. Standard of Review

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may make a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss for failure to state a claim, the court presumes all factual allegations to be true and all reasonable inferences from those allegations are construed in favor of the non-moving party. Cooperman v. R.G. Barry Corp., 775 F. Supp. 1211, 1212 (D. Minn. 1991). A court should grant a motion to dismiss where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the

allegations." Piper Jaffray Cos., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 967 F. Supp. 1148, 1152 (D. Minn. 1997)(citations omitted).

**B. Fraud**

Winthrop moves to dismiss Eaton's counterclaim for fraud. In its counterclaim, Eaton asserts:

> [Winthrop] has consistently represented that [Eaton] was contractually required to return the equipment leased under Lease Schedule 001R no later than March 31, 2001. [Winthrop] further represented that the failure to return all of the equipment leased under Lease Schedule 001R would result in [Eaton] being automatically liable for another 12 months of lease payments pursuant to the terms of the Lease Agreement. [Winthrop] knew that both of these representations were materially false and made them with the intent to deceive [Eaton]. Neither the Lease Agreement nor the Lease Schedules give [Winthrop] any such rights. [Winthrop] deceived [Eaton] for the purpose of extracting benefits from [Eaton] to which [Winthrop] was not contractually or otherwise entitled. In essence, [Winthrop] made these false representations in order to exert improper and unlawful pressure upon [Eaton] and in order to increase its potential recovery of lease fees from [Eaton].

(Counterclaim at ¶ 17.) Because Eaton fails to state a claim upon which relief may be granted, the court grants Winthrop's motion to dismiss.

Rule 9(b) requires that "all averments of fraud ... [and] the circumstances constituting fraud ... be stated with particularity." Fed. R. Civ. P. 9(b). Specifically, Rule 9(b) requires that a complaint plead the "who, what, when, where and how" of the alleged fraudulent conduct. Weisburgh v. St. Jude Medical Inc., 158 F.R.D. 638, 641 (D. Minn. 1994); see Federal Deposit Ins. Corp. v. R-C Marketing & Leasing, Inc., 714 F. Supp. 1535, 1542 (D. Minn. 1989)(finding that "defendant fails to specify the time, place and content of any alleged fraudulent misrepresentations and the person making such misrepresentations as is generally required by Fed. R. Civ. P. 9(b).").

Rule 9(b) must be read in conjunction with Rule 8, which requires that complaints contain a "short and plain statement" of each claim. Bale v. Dean Witter Reynolds, Inc., 627 F. Supp. 650, 652 (D. Minn 1986). Reading Rule 9(b) in light of Rule 8 requires plaintiff to set forth "sufficient factual specificity to provide assurance that [the] plaintiff has investigated ... the alleged fraud and reasonably believes that a wrong has occurred," without necessarily providing an "exhaustive cataloging" of facts. Temple v. Haft, 73 F.R.D. 49, 53 (D. Del. 1976).

Fraud contains eleven elements: (1) there must be a representation, (2) the representation must be false, (3) it must have to do with a past or present fact, (4) that fact must be material, (5) it must be susceptible of knowledge, (6) the

representer must know it to be false or, in the alternative, must assert it as of his knowledge without knowing whether it is true or false, (7) the representer must intend to have the other person induced to act or justified in acting upon it, (8) that person must be so induced to act or so justified in acting, (9) that person's action must be reliant upon the representation, (10) that person must suffer damage and (11) that damage must be attributable to the representation, that is, the statement must be the approximate cause of the injury. Davis v. Re-Trac Mfg. Corp., 149 N.W.2d 37, 38-39 (Minn. 1967). Allegations of fraud that merely parrot the legal elements of the claim fail to satisfy Rule 9(b). See Temple 73 F.R.D. at 53.

Here, Eaton does not plead with particularity any fraudulent intent, action in reliance, causation or damages. Instead, Eaton's bare allegations merely parrot the legal requirements of fraud. See Roberts v. Francis, 128 F.3d 647, 651 (8th Cir. 1997)("When pleading fraud, a plaintiff cannot simply make conclusory allegations."); Temple 73 F.R.D. at 53 (finding that complaint fails to allege fraud with particularity where complaint alleges fraud in conclusory legal language parroting the language of the statutes and rule under which the claims are being made); Allison v. Security Ben. Life Ins. Co., 980 F.2d 1213 (8th Cir. 1992)(holding that bare allegation of fraud which results in monetary loss will not justify punitive damages without evidence of

detrimental reliance). For instance, with respect to damages, Eaton's counterclaim blankly states: "As a direct and proximate result of Eaton's reasonable reliance upon [Winthrop's] fraudulent misrepresentation, Eaton has suffered damages." (Counterclaim at ¶ 35.) Because the pleadings fail to allege facts upon which relief may be granted, the court dismisses Eaton's counterclaim. See Silver v. H & R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997)(providing that the court must "reject conclusory allegations of law and unwarranted inferences.") (citations omitted).

**C. Consumer Fraud Act**

Winthrop also moves to dismiss Eaton's counterclaim for violation of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F, et seq. Eaton claims that Winthrop "has made misrepresentations in connection with its lease of equipment to Eaton." (Counterclaim at ¶ 41.) The court grants Winthrop's motion because Eaton has failed to state a claim upon which relief may be granted.

To make a claim under the Minnesota Consumer Fraud Act, Eaton must allege that Winthrop made fraudulent statements or misrepresentation in connection with the sale of any merchandise. Minn. Stat. § 325F.68. The facts shows that the sale of Winthrop's leasing services took place years before Winthrop's alleged misrepresentations. As a result, any alleged misrepresentations by Winthrop did not take place in connection with the sale of Winthrop's leasing services. See Group Health Plan, Inc. v. Philip

Morris, Inc., 68 F. Supp. 2d 1064, 1069 (D. Minn. 1999)(holding that plaintiffs did not adequately plead the elements of consumer fraud where misrepresentations were not made in connection with a sale); Cooperman v. R.G. Barry Corp., 775 F. Supp. 1211, 1213-14 (D. Minn. 1991)(granting defendant's motion to dismiss Minnesota Consumer Fraud Act claim where plaintiff alleged no fraud in the context of a sale). Thus, Eaton has not stated a claim upon which relief may be granted and the court grants Winthrop's motion to dismiss this counterclaim.

**D. Breach of Good Faith and Fair Dealing**

Winthrop further moves to dismiss Eaton's counterclaim for breach of an implied covenant of good faith and fair dealing. Federal Rule of Civil Procedure 12(b)(6) converts motions to dismiss into motions for summary judgment upon presentation of evidence outside the pleadings. Fed. R. Civ. P. 12(b)(6). A motion to dismiss "must be treated as a motion for summary judgment when matters outside the pleadings are presented and not excluded by the trial court." Gibb v. Scott, 958 F.2d 814, 816 (8th Cir. 1992). Since Eaton introduced evidence to support its counterclaim for breach of an implied covenant of good faith and fair dealing, the court treats Winthrop's motion as one for summary judgment and grants the motion.

Under general contract law, a party who first breaches a contract is usually precluded from successfully claiming against

the other party; the first breach serves as a defense against the second breach. Carlson Real Estate Co. v. Soltan, 549 N.W.2d 376, 379 (Minn. Ct. App. 1996); MTS Co. v. Taiga Corp., 365 N.W.2d 321, 327 (Minn. Ct. App. 1985). A breach of contract occurs when a party unjustifiably hinders the other party from performing. Zobel & Dahl Construction v. Crotty, 356 N.W.2d 42, 45 (Minn. 1984). Under such circumstances, the non-breaching party is excused from performing under the contract. Id.

Put another way, every contract contains an implied condition that each party will not unjustifiably hinder the other from performing. Id.; In re Hennepin County 1986 Recycling Bond Litigation, 540 N.W.2d 494, 502 (Minn. 1995). Implied covenants, however, are not favored in the law. Plaza Assoc. v. Unified Development, Inc., 524 N.W.2d 725, 727 (Minn. Ct. App. 1994); Keystone Square Shopping Center Co. v. Marsh Supermarkets, Inc., 459 N.E.2d 420, 423 (Ind. Ct. App. 1984).

In this case, unlike the cases Eaton cites for support, Eaton provides no evidence showing that Winthrop's actions actually hindered Eaton from performing under the lease, but instead asserts that Winthrop attempted to hinder Eaton. See Zobel, 356 N.W.2d at 45; Instrumentation Serv., Inc. v. Gen. Res. Corp., 283 N.W.2d 902, 908 (Minn. 1979). For instance, Eaton states that Winthrop "repeatedly attempted to unjustifiably hinder" Eaton by failing to provide return shipping information to Eaton within a short time

after receiving Eaton's notice of termination. (Counterclaim at ¶ 29.) Eaton's contention clearly fails because Eaton requested that Winthrop provide the business address of its loading dock by March 31, 2001, (Gendler Reply Aff., Ex. C), and Winthrop provided Eaton with the street address on March 14, 2002 - more than two weeks before Eaton's requested date for that information, (Gendler Reply Aff., Ex. F).[2] Moreover, Eaton also knew that it would have to ship the equipment back to Minneapolis, Minnesota because the lease so stated. (See Gendler Aff., Ex. A at ¶ 7.)

Eaton further claims that Winthrop attempted to hinder Eaton by failing to give Eaton a list of the lease equipment at each of its locations. Eaton, however, presents no evidence that Winthrop actually hindered Eaton or that Winthrop had an obligation to provide such a list. Moreover, if Winthrop had such an obligation, Winthrop fulfilled it. Winthrop provided monthly reports to Eaton from 1997 to 1999, listing the Eaton locations where Winthrop understood its equipment to be. (Gendler Reply Aff., Ex. M at ¶ 8.)

---

[2] Winthrop submitted the Affidavit of Paul Gendler in support of its reply memorandum. While the court recognizes that the Local Rules deter parties from submitting affidavits and other evidentiary submissions in conjunction with a reply brief, see LR 7.1(b)(C), the court finds that the interests of justice require the court to consider the affidavit submitted in this case for limited purposes of addressing Eaton's counterclaim for breach of an implied covenant.

Even if the court had found any evidence that Winthrop hindered Eaton's performance, Eaton provides no persuasive evidence showing that Winthrop's breach caused Eaton's subsequent breach. See Carlson Real Estate Co., 549 N.W.2d 379 at 379 (finding that respondent is not precluded from seeking restitution for appellants breach where respondent's initial breach did not cause appellant's subsequent breach). The court therefore grants summary judgment for Winthrop on Eaton's claim of breach of good faith and fair dealing.

**E. Breach of Contract**

Finally, Winthrop seeks to dismiss Eaton's counterclaim for breach of contract. Eaton alleges that Winthrop breached the lease by improperly seizing Eaton's security deposit for Lease Schedule No. 001R and by breaching Eaton's right to quiet possession of the computer equipment under the lease. Winthrop moves to dismiss the counterclaim. Since Eaton has introduced evidence to support its counterclaim for breach of contract, the court treats Winthrop's motion as one for summary judgment and grants it.[3]

---

[3] As support for its breach of contract counterclaim, Eaton states in its memorandum that "the Facts section of this Memorandum clearly sets forth evidence for WRC's breach of contract. Additionally, Section II, B. of this memorandum provides more analysis of how and when Eaton breached the lease." (Def.'s Mem. in Opp'n to P.'s Mot. S. J. at 29-30.) The evidence offered in those sections is sufficient to transform Winthrop's motion to dismiss into a motion for summary judgment.

In order to prevail on a claim for breach of contract, a party must allege (1) formation of a contract, (2) performance of any conditions precedent by that party, (3) material breach by the other party and (3) damages. Parkhill v. Minn. Mut. Life Ins. Co., 174 F. Supp. 2d 951, 961 (D. Minn. 2000). Here, as discussed, Winthrop and Eaton are parties to an unambiguous lease agreement. The terms of the agreement clearly allow Winthrop to retain the security deposit upon Eaton's default. In particular, Lease Schedule No. 001R states: "Lessee shall deliver upon execution of this Lease Schedule by Lessee, a Security Deposit in the amount of $83,831.00, which amount is equal to one month of Lessor's Lease Charge. Provided that there is no default by Lessee, this Security Deposit will be applied by Lessor as the Lease Charges for the last month of the lease." (Gendler Aff., Ex. C.) Because Eaton defaulted under the lease, Winthrop did not breach the lease agreement by retaining the security deposit.

Moreover, the lease provides that Eaton retains the right to quiet possession "so long as [Eaton] is not in default...." (Gendler Aff., Ex. A at ¶ 21.) In fact, Eaton expressly acknowledged in the lease that Winthrop has the right to repossess the leased equipment should Eaton default. (Gendler Aff. Ex. A at ¶ 27 ("LESSEE ACKNOWLEDGES THAT, PURSUANT TO SECTION 18(b) HEREOF, LESSOR HAS BEEN GIVEN THE RIGHT TO REPOSSESS THE EQUIPMENT SHOULD LESSEE BECOME IN DEFAULT OF ITS OBLIGATIONS HEREUNDER").) Eaton's

right to quiet possession therefore explicitly depends upon Eaton's performance of its lease obligations. Because the court has found that Eaton defaulted under the lease, Eaton cannot now argue that Winthrop breached Eaton's right to quiet possession by asking for the return of its equipment. The court therefore grants summary judgment for Winthrop on Eaton's breach of contract claims.

**III. Winthrop's Claim for Full Damages**

Winthrop claims that it is entitled to full damages under the contract, while Eaton asserts that Winthrop's claim for damages constitutes an unenforceable penalty. After a review of the law and facts, the court concludes that Winthrop is entitled to full damages under the contract.

"Liquidated damages may only be recovered by contract." E.D.S. Const. Co. v. North End Health Center, Inc., 412 N.W.2d 783, 786 (Minn. Ct. App. 1987). A liquidated damages clause is valid only (1) where damages are not readily ascertainable and (2) where the amount fixed is reasonable in light of the contract as a whole, the nature of the damages contemplated and the surrounding circumstances. Id.; Bellboy Seafood Corp. v. Nathanson, 410 N.W.2d 349, 352 (Minn. Ct. App. 1987). To determine whether such a clause is for reasonable liquidated damages, rather than an unenforceable penalty, the court examines the language of the contract and the facts and circumstances under which it was made. Id. "Relevant to this inquiry is the sophistication of the parties and whether both

sides were represented by able counsel who negotiated the contract at arms length without the ability to overreach the other side." Wilmington Trust Co. v. Aerovias de Mexico, S.A., 893 F. Supp. 215, 218 (S.D.N.Y. 1995).

Here, the damages clause in the lease provides for liquidated damages. At the time that the lease agreement was established, Winthrop's potential damages were uncertain. As the court stated in PacifiCorp Capital, Inc. v. Tano, Inc., 877 F. Supp. 180, 184 (S.D.N.Y. 1995):

> [T]he value of the computer equipment at termination of the lease depends on its physical condition and market conditions at that time. Because these values are of such uncertain nature and any calculation of damages would depend on these figures, courts are inclined to view a damage provision in a lease agreement as a liquidated damages clause rather than a penalty.

Moreover, especially since the lease agreement was negotiated by sophisticated parties in an arms-length transaction, the court finds that the amount fixed is reasonable in light of the contract as a whole, the nature of the damages contemplated, and the surrounding circumstances.

Eaton argues that Winthrop is not entitled to damages under the casualty loss provision because Winthrop's alleged casualty loss damages are not proportionate to the actual loss incurred by Winthrop. Eaton's argument, however, fails because, as stated in Coastal Leasing Corp. v. T-Bar S Corp., 496 S.E.2d 795, 798 (N.C.

Ct. App. 1998), the court should not dismiss a reasonable liquidated damages agreement merely because hindsight shows that the agreement contained an inaccurate estimation of probable loss. Moreover, Winthrop's damages claim will not result in an award that is manifestly disproportionate to the actual loss, since Winthrop seeks only the greater of the present value or casualty loss, not both, and since Winthrop must credit Eaton with any funds or value derived from the repossessed or returned equipment.[4] (Gendler Aff., Ex. A at ¶ 18(b)(3)-(6).) Winthrop has a duty to mitigate damages.

**CONCLUSION**

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Winthrop's motion for summary judgment [Docket No. 31] is granted in its entirety;

2. Winthrop's motion to dismiss Eaton's counterclaims [Docket No. 31] is granted with respect to Eaton's counterclaims for fraud and for a violation of the Consumer Fraud Act; and

---

[4] Winthrop may petition the court for attorneys' fees and costs, accrued taxes and late charges.

3. Winthrop's motion to dismiss Eaton's counterclaims for breach of implied covenant of good faith and fair dealing and breach of contract [Docket No. 31] is treated as a motion for summary judgment and the court grants summary judgment for Winthrop on these counterclaims.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 22, 2002

David S. Doty, Judge
United States District Court

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.