01-649 DSD/SRN

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 03-1790

| | | |
|---|---|---|
| Winthrop Resources Corporation, a Minnesota corporation, | * | |
| Appellee, | * | Appeal from the United States District Court for the District of Minnesota. |
| v. | * | |
| Eaton Hydraulics, Inc., formerly known as Vickers, Inc., a Delaware corporation, | * | |
| Appellant. | * | |

Submitted: October 23, 2003

Filed: March 11, 2004

Before RILEY, HEANEY, and SMITH, Circuit Judges.

SMITH, Circuit Judge.

SCANNED
JUN 28 2004
U.S. DISTRICT COURT MPLS

Eaton Hydraulics, Inc. ("Eaton"),[1] appeals the district court's[2] summary judgment issued in favor of Winthrop Resources Corporation ("Winthrop") in Winthrop's breach-of-contract claim. The district court determined that Eaton breached the contract and owes $4,365,437.64 in damages, costs, disbursements, and attorney's fees. We affirm.

## I. *Background*

Winthrop leases computer systems and other technology equipment to corporate customers. After Winthrop's customers select their equipment, Winthrop then purchases and leases the equipment to the customers. In June 1997, Eaton and Winthrop entered into a master lease agreement.[3] The agreement provided that Winthrop would purchase almost $9 million of computer equipment that Eaton selected. The parties also signed nine lease schedules (001R, 002R, A01, A02, A03, B01, B02, C01 and C02) issued pursuant to the master lease agreement.[4] Each lease schedule identified particular pieces of equipment leased by Eaton, and each incorporated the terms of the master lease by reference. Each lease schedule listed the monthly amount Eaton agreed to pay for the use of Winthrop's equipment. By

---

[1] Vickers, Inc. originally entered into the lease agreements with Winthrop. Eaton subsequently acquired Vickers. Eaton acknowledges that it is bound by the lease agreements with Winthrop. For ease of discussion, we refer only to Eaton in this appeal.

[2] The Honorable David S. Doty, United States District Judge for the District of Minnesota.

[3] The lease provided that Minnesota law would govern all disputes.

[4] The master lease agreement and the lease schedules are collectively referred to as the "Lease" unless otherwise noted.

executing the Lease, both Winthrop and Eaton expressly agreed that each provision was binding and enforceable.[5]

Winthrop sued Eaton on April 13, 2001, alleging that Eaton breached the Lease. Specifically, Winthrop claimed that Eaton failed to meet numerous payment obligations, failed to properly maintain the equipment during possession, failed to properly package the equipment upon return, and impermissibly sold pieces of equipment in violation of the Lease terms. Eaton counterclaimed that Winthrop breached the implied covenant of good faith and fair dealing, committed fraud, breached the contract, and violated various provisions of Minnesota law.

Winthrop moved for summary judgment on its claims and moved to dismiss Eaton's counterclaims. In its motion, Winthrop requested damages in the amount of $4,222,024.67, plus costs, disbursements, and attorney's fees. Winthrop provided affidavits and supporting documents detailing Eaton's various Lease breaches. Winthrop submitted its damage calculation pursuant to section 18 of the Lease setting forth past-due Lease charges, past-due taxes and late fees, and the greater of: (i) the accelerated rent remaining due, or (ii) the Casualty Loss Value ("CLV") for each lease schedule.[6]

---

[5] When Eaton acquired Vickers, Eaton sent its standard lease agreement to Winthrop and asked Winthrop to substitute Eaton's standard form for the Lease that Vickers and Winthrop negotiated and signed. Winthrop declined the proposed substitution; however, Winthrop included Eaton's proposed substitution lease in its brief and appendix to compare the language of the proposed lease to the language of the controlling Lease.

[6] The "past due" component of Winthrop's damages calculation was the sum of: (i) past-due Lease charges incurred during the initial terms of lease schedules 002R, A02, A03, B01, B02, C01 and C02; (ii) past due Lease charges incurred during the extension terms of lease schedules 001R and A01; (iii) past-due taxes and late fees. The "greater of accelerated rent or Casualty Loss Value" component of Winthrop's damages calculation was the sum of: (i) the CLVs of lease schedules

In its counterclaim, Eaton asserted that: (i) Winthrop failed to give notice and opportunity to cure the payment defaults; (ii) it had procured Manufacturer's Maintenance Agreements ("MSMAs") on the equipment and that Winthrop purchased the MSMAs; (iii) Winthrop breached first; (iv) the CLV was an unenforceable penalty; (v) the CLV did not apply to equipment on "terminated" lease schedules. Applying Minnesota law, the district court rejected Eaton's arguments as insufficient to avoid liability and damages under the plain terms of the Lease.

On April 23, 2002, the district court granted Winthrop's motion for summary judgment. The district court found that Eaton breached the Lease and that the CLV damages provision was enforceable. The district court noted that Eaton did not dispute that it had breached the Lease. The court also noted that Eaton did not dispute Winthrop's damages calculation.

Winthrop subsequently filed a motion pursuant to Federal Rules of Civil Procedure 58 and 59(e) requesting clarification of the damages award in the summary judgment and dismissal order. The district court awarded judgment on April 23, 2002, in the amount of $4,365,437.64, which included Winthrop's costs and attorney's fees, less mitigation, because Eaton failed to challenge Winthrop's calculation of damages.

On May 8, 2002, Eaton moved pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend the judgment. Eaton argued that the expert reports it submitted after the summary-judgment hearing demonstrated the unreasonableness of the CLV provision. Eaton also argued–for the first time–that: (i) Winthrop failed to prove that its claimed damages were reasonable; (ii) it could not maintain MSMAs on the equipment because MSMAs did not exist for this equipment; (iii) Eaton properly terminated lease schedules A02 and C01.

---

001R, 002R, A01, A03, B01, B02 and C02, and (ii) the accelerated rents due for lease schedules C01 and A02.

On December 10, 2002, the district court denied Eaton's Rule 59(e) motion. The district court determined that Eaton failed to submit any newly-discovered evidence, failed to show reversible error, and failed to present any facts or law overlooked by the court. Following this decision, Winthrop moved for entry of judgment on damages, and on February 21, 2003, the district court entered an amended judgment including damages in the amount of $4,365,437.64.

Eaton timely filed a notice of appeal from all of the district court's orders. However, in this appeal, Eaton challenges only the grant of summary judgment and the order clarifying the damages award.

II. *Standard of Review*

Rule 56(c) provides that a motion for summary judgment shall be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review de novo a grant of summary judgment, applying the same standard as the district court. *Evergreen Inv., LLC v. FCL Graphics, Inc.*, 334 F.3d 750, 753 (8th Cir. 2003). When considering a motion for summary judgment, we must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The burden of demonstrating that there are no genuine issues of material fact rests on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Medtronic, Inc. v. U.S. Xpress, Inc.*, 341 F.3d 798, 800 (8th Cir. 2003). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik v. County of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). In addition, where the district court's decision involved determinations of state law, we review those determinations de novo. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991).

## III. *Analysis*

Eaton challenged only the summary-judgment and damages orders.[7] Despite the parties' extensive arguments in the briefs–including arguments raised in and in defense of Eaton's Rule 59(e) motion–we review de novo only the evidence and arguments that were before the district court when it made its determination in the orders challenged on appeal. *See Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 413 (8th Cir. 1988) (failure to raise an argument when contesting motion for summary judgment, and raising it only in a post-judgment Rule 59(e) motion does not preserve issue for de novo review on appeal). As such, this appeal turns on two core issues–(1) whether Eaton defaulted under the contract, and (2) whether the damages award was proper.

### A. *Default Under the Lease*

The district court determined that Eaton defaulted under section 17(a) of the Lease by failing to make required Lease, late-charge, and property-tax payments for the equipment in 2001, failing to properly pack, ship, and return all of the equipment as required in section 7, and failing to properly maintain the equipment under the MSMAs required in section 8.[8]

[7] Eaton's notice of appeal includes the district court's orders on summary judgment, damages, and Rule 59(e). However, Eaton stated in its initial brief and in oral argument that it appeals only from the district court's orders on summary judgment and damages.

[8] Because we affirm the district court's decision regarding Eaton's default under section 17 of the Lease, we need not address whether Eaton also defaulted–or whether Winthrop complied with the cure provisions–under sections 7, 8, and 17(b) of the Lease.

Eaton argues that it did not default under section 17(a) of the Lease because, although it now concedes that it made late payments of "Lease Charges,"[9] [10] it argues for the first time here that section 17(a) required Winthrop to give Eaton notice and twenty days to cure any potential default. Section 17(a) of the Lease provides in pertinent part:

> The occurrence of any of the following events shall constitute an event of default under this Lease Agreement or any Lease Schedule:

---

[9] Section 3 of the Lease provides that the aggregate Lease charges are due no later than the first day of each month, and late charges accrue if payments are not timely:

> The Monthly Lease Charge shall be paid by Lessee monthly in advance (first day of the month) with the first full month's payment due on the Commencement Date.
>
> * * *
>
> Lessee agrees that if payment as specified above is not received by Lessor on the due date, Lessee shall . . . pay on demand, as a late charge, an amount equal to one and one-half percent (1½%) or the maximum percentage allowed by law, whichever is less, of the amount past due.

[10] Winthrop submitted documentation detailing which payments were late and by how many days, and summaries of unpaid charges and late charges due as of December 31, 2001. Eaton, on the other hand, submitted affidavits from two of its employees denying that it made any payments late. Eaton argues that these affidavits created a question of fact sufficient to defeat summary judgment. These affidavits are unsupported by any documentation. A party resisting a properly supported summary-judgment motion may not rest upon the mere allegations or denials of the pleadings, but by affidavit or otherwise as provided by Rule 56 must set forth specific facts showing the existence of a genuine issue for trial. *Allen v. Entergy Corp.*, 181 F.3d 902, 904 (8th Cir. 1999) (citing *Dancy v. Hyster Co.*, 127 F.3d 649, 653 (8th Cir. 1997), *cert. denied*, 523 U.S. 1004 (1998); Fed. R. Civ. P. 56(e)).

> (a) The nonpayment by Lessee of any Lease Charges when due, or the nonpayment by Lessee of any other sum required hereunder to be paid by Lessee which nonpayment continues for a period of twenty (20) days after written notice thereof from Lessor.

The district court determined that this section unambiguously provides that default occurs if Eaton failed to pay Lease charges when due. Eaton argues that the district court incorrectly interpreted the plain, unambiguous language of section 17(a).

To interpret the terms of a contract under Minnesota law, we must initially determine whether a contract term is ambiguous. *Porous Media Corp. v. Midland Brake, Inc.*, 220 F.3d 954, 959–960 (8th Cir. 2000) (citing *Green Tree Acceptance, Inc., v. Wheeler*, 832 F.2d 116, 117 (8th Cir. 1987) (applying Minnesota law)). The determination that a contract is or is not ambiguous is a legal determination, and no deference is paid to the trial court's decision on this issue. *Maurice Sunderland Architecture, Inc. v. Simon*, 5 F.3d 334, 337 (8th Cir. 1993); *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn. 1982). If the contract is unambiguous, the interpretation is a question of law and is reviewed de novo. *Lakeland Tool & Eng'g, Inc. v. Thermo-Serv, Inc.*, 916 F.2d 476, 481 (8th Cir. 1990) (applying Minnesota law).

However, if a contract is ambiguous, the meaning of the contract becomes a question of fact, *City of Virginia v. Northland Office Properties Ltd. Partnership*, 465 N.W.2d 424, 427 (Minn. Ct. App.1991), and summary judgment is inappropriate. *In re Turners Crossroad Dev. Co.*, 277 N.W.2d 364, 368 (Minn. 1979). In interpreting the meaning of an unambiguous contract, the court cannot consider anything other than the contract. *Carl Bolander & Sons, Inc. v. United Stockyards Corp.*, 215 N.W.2d 473, 476 (Minn. 1974). However, if a contract term is ambiguous, extrinsic evidence can be considered by the trier of fact to help it determine the parties' intent. *Material Movers, Inc. v. Hill*, 316 N.W.2d 13, 17 (Minn. 1982).

We believe the district court properly interpreted and applied the plain language of section 17(a). Section 17(a) provides two ways Eaton could default through nonpayment: 1) "nonpayment of any Lease Charges when due," or 2) "nonpayment of any other required sum which nonpayment continues for a period of twenty days after written notice." Grammatically, this language describes alternative nonpayment default triggers. It consists of two independent clauses, separated by a comma and the disjunctive "or," with no comma before the word "which" in the second clause. This clearly indicates that the sentence contains two separate provisions under which default may occur. Section 17(a) unambiguously provides that default occurred when Eaton failed to make timely payment of Lease charges. As such, we affirm the district court's determination that Eaton defaulted under section 17(a) of the Lease.

B. *Damages*

Section 18 of the Lease provides various remedies that Winthrop may pursue in whole or in part upon Eaton's default. The relevant terms of section 18 provide:

> (a) Without retaking the Equipment
>
> (1) recover from Lessee all accrued and unpaid rents and other amounts then due and owing under the terms hereof,
>
> * * *
>
> (3) accelerate and cause to become immediately due and payable all rents and other amounts due and/or likely to become due hereunder and recover from Lessee the then worth to Lessor of such amounts,
>
> (4) cause to become immediately due and payable and recover from Lessee the then applicable Unrecovered Investment in the Equipment;
>
> (b) Retake possession of the Equipment (by Lessor, independent contractor, or by requiring Lessee to assemble and surrender the

> Equipment in accordance with the provisions of Section 7 hereinabove) without liability to Lessee therefor which is hereby expressly waived, and
>
> * * *
>
> (2) recover from the Lessee all accrued and unpaid rents and other amounts owing under the terms hereof,
>
> (3) sell the Equipment at public or private sale, and recover from Lessee the difference, if any, by which the Net Proceeds of sale shall be less than the Lessor's then applicable Unrecovered Investment in the Equipment, . . . .

Based on these recovery provisions, Winthrop claimed $4,222,024.67 in total damages. Eaton contested the claim by arguing that the CLV Lease provision was an unenforceable penalty rather than a liquidated-damages clause and that the CLV did not apply to equipment on terminated lease schedules.[11] The district court determined that Winthrop was entitled to the entire amount–plus costs, disbursements, and attorney's fees–for an award totaling $4,365,437.64.[12]

---

[11] The court noted in its February 21, 2003, order on Winthrop's motion for entry of judgment on damages that Eaton did not contest the calculation of damages, only whether damages were permissible. Eaton raised the calculation argument for the first time in its Rule 59(e) motion, arguing that Winthrop only provided the summary of damages in its reply brief on summary judgment. The record indicates, however, that Winthrop provided this summary in both the documents submitted in support of its motion for summary judgment and with an affidavit in its reply. Regardless, because this claim was raised in Eaton's Rule 59(e) motion, it is not cognizable on review of summary judgment.

[12] The district court awarded the initial $4,222,024.67 in damages plus $221,132.97 in costs, disbursements, and attorney's fees, less $77,720 in mitigation, for a total judgment of $4,365,437.64.

We have reviewed the parties' summary-judgment arguments presented to the district court. Contrary to Eaton's much-expanded arguments on appeal, Eaton's summary-judgment response challenged Winthrop's motion on only two grounds–whether the CLV clause in the contract is an unenforceable penalty clause or a permissible liquidated-damages clause and whether the CLV applies to equipment on terminated lease schedules.

1. *Liquidated-Damages Clause*

Regarding whether the CLV is a liquidated-damages[13] clause, Eaton argued in its response to summary judgment that the CLV clause, "independent of the other cumulative remedies set forth in the Lease, results in absurd and patently unreasonable penalty damages." Eaton based its proportionality argument upon the comparison of the fair-market value and the CLV. For example, Eaton argued that a computer with a fair-market value of $75 has a CLV of $500 to $700. Eaton argued that Winthrop's CLV is based, not on fair-market value upon return, but instead on the interest rate and "soft costs" associated with Winthrop's purchase of equipment. Finally, Eaton argued that Winthrop should not be permitted to recover both the accelerated Lease payments and the CLV.

Under Minnesota law, a liquidated-damages clause is enforceable when 1) "the fixed amount is a reasonable forecast of just compensation for the harm caused by the

[13]The term "liquidated damages" signifies the damages the amount of which the parties to a contract stipulate and agree, when the contract is entered into, shall be paid in case of breach. It is well settled that the parties to a contract may stipulate in advance as to the amount to be paid in compensation for loss or injury which may result in the event of a breach of the agreement. A stipulation of this kind is enforceable, at least in those cases where the damages which result from a breach of the contract are not fixed by law or are in their nature uncertain and where the amount stipulated does not manifestly exceed the injury which will be suffered. *Dean Van Horn Consulting Assoc., Inc. v. Wold*, 367 N.W.2d 556, 559–560 (Minn. App. 1985) (internal quotations omitted).

breach," and 2) "the harm is incapable or very difficult of accurate estimation." *Bellboy Seafood Corp. v. Nathanson*, 410 N.W.2d 349, 352 (Minn. Ct. App. 1987). The difficulty of proving damages is an important factor in determining whether the provision in the contract is a penalty. *Meuwissen v. H.E. Westerman Lumber Co.*, 16 N.W.2d 546, 550 (Minn. 1944). Liquidated-damages clauses function best when damages include items such as goodwill and loss of profits, which can be difficult to evaluate. *Id.* at 550. "It is not of controlling importance, where the actual damages are doubtful, speculative, and difficult of proof, that the amount stipulated is much larger than the apparent actual injury and loss." *Id.* (quoting *Taylor v. Times Newspaper, Co.*, 86 N.W. 760, 762 (Minn. 1901)). In addition, "[t]he rule is well settled that a contract provision for liquidated damages can be enforced without proving actual damages as long as the amount stated is reasonable." *Willgohs v. Buerman*, 115 N.W.2d 59, 62 (Minn. 1962).

In determining the legality of the clause, we have to determine 1) whether the fixed amount is a reasonable forecast of just compensation for the harm caused by the breach, and 2) whether the harm is incapable or very difficult of accurate estimation. *Bellboy Seafood Corp.*, 410 N.W.2d at 352. We find that the CLV clause in this contract is a proper liquidation clause because of the speculative nature of the value of the computers at termination of the lease schedules. Eaton's argument is that the percentages used in the CLV calculation are too high because the fair-market value of the equipment at lease-schedule termination will be much lower than the amount the percentages allow. However, the CLV provision is clearly not a fair-market value calculation. Instead, the CLV presumably includes Winthrop's liability for buying the computer equipment, any damage or loss of the equipment, and other reasonable considerations. That the CLV percentage at the end of a lease-schedule term or upon default may be four or five times the fair-market value of the equipment does not render this CLV clause a penalty clause. The parties negotiated these values prior to signing the contract, and the percentages were clearly set out in each of the lease schedules for each month of the lease-schedule term.

Winthrop and Eaton–two sophisticated international companies–negotiated this contract and agreed upon the CLV and other damages provisions at signing. The CLV clause in section 18 specifically sets out the procedure to calculate CLV at any time during the initial term of the lease schedule and thereafter. As noted, the CLV of the equipment listed on any particular lease schedule is a percentage of the original cost of the equipment as set forth on the applicable casualty-loss table, which percentage decreases every month during the initial term. After the end of the initial term, the CLV remains constant. In essence, it is a depreciation schedule with the depreciation rate based on variable factors anticipated at the time of the signing of the agreement and based on the condition of the computer equipment, a very speculative consideration, at lease-schedule termination. *See PacifiCorp Capital, Inc. v. Tano, Inc.*, 877 F.Supp. 180, 184 (S.D.N.Y. 1995). As Winthrop notes, Eaton's standard lease agreement also contains a CLV provision. This concept is not new to Eaton, and is one that it understood and agreed to in the Lease.

Eaton also argued that Winthrop will be doubly compensated by recovering both the CLV and accelerated-rent payments. Eaton's argument is unfounded because the district court specifically ordered that Winthrop may collect the greater of the two, but not both.

2. *CLV and Terminated Lease Schedules*

Finally, Eaton asserted below that the CLV provision does not apply to equipment on properly-terminated lease schedules.[14] Although the district court failed

[14] Eaton argues on appeal that Winthrop could not recover the CLV for lease schedules A02 and C01 because a question of fact remains as to whether they were timely terminated. In addition, Eaton asserts that even if they were not timely terminated, Winthrop cannot extend those schedules for a year because Winthrop breached the contract prior to the extension of the lease-schedule term. Again, Eaton did not raise these specific arguments in the district court in opposition to summary judgment; Eaton instead raised these issues in its post-judgment Rule 59(e) motion.

to address this issue, we have thoroughly reviewed the record and conclude that the CLV provision possibly could, in particular situations, apply to lease schedules for which notice of termination has been timely provided. We do not reach the issue of whether the CLV provision applies in this particular instance, however, because Eaton failed to properly raise this issue below to allow us to address it on appeal.

IV. *Motion to Strike*

Winthrop filed a motion to strike two declarations Eaton submitted in its appendix and on which it relied in its brief to this court. These declarations from Leonid Kudishevich and Scott Deakin were not part of the pleadings and documents presented to the district court on summary judgment. In response to this motion, Eaton acknowledged its inadvertent inclusion of these declarations. As such, we grant Winthrop's motion to strike these declarations from Eaton's appendix and all references to them in Eaton's brief. It is well settled that "documents presented for the first time at the appellate stage of any proceeding are generally not considered part of the record for the review by the appellate court." *Huelsman v. Civic Ctr. Corp.*, 873 F.2d 1171, 1175 (8th Cir. 1989). "[O]nly those papers and exhibits filed in the [trial] court can constitute the record on appeal." *Huelsman*, 873 F.2d at 1175. In *Huelsman*, we granted a motion to strike an affidavit presented by appellant for the first time on appeal. *Id.*; *see also Shea v. Esensten*, 208 F.3d 712, 720 (8th Cir. 2000) (granting motion to strike portions of appellant's appendix and references to those documents in appellant's brief where the documents were not before the trial court when it ruled on the matter below); *Barry v. Barry*, 78 F.3d 375, 379 (8th Cir. 1996) (granting motion to strike and stating that "only evidentiary materials that were before the trial court at the time the . . . ruling was made" would be considered).

---

Because Eaton did not appeal that motion, we will not consider the arguments.

V. *Conclusion*

We affirm the district court's decision in all respects. However, we remand to the district court for an accounting and adjustment to the damages calculation for mitigation amounts from any equipment resold by Winthrop, consistent with the holdings articulated in this opinion.

---

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
THOMAS F. EAGLETON COURT HOUSE
ROOM 24.329
111 S. 10TH STREET
ST. LOUIS, MISSOURI 63102

MICHAEL E. GANS
Clerk of Court

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

June 23, 2004

Mr. Richard Sletten
Clerk
U.S. DISTRICT COURT, MINNESOTA
202 U.S. Courthouse
300 S. Fourth Street
Minneapolis, MN 55415

Re: 03-1790 Winthrop Resources vs. Eaton Hydraulics

Dear Clerk:

The mandate of this Court is being sent to the clerk of the district court, together with a receipt. The clerk of the district court is requested to sign, date, and return the receipt to this office.

Any district court records in this court's possession will be returned shortly.

(5175-010199)

Sincerely,

Michael E. Gans
Clerk of Court

dmh

Enclosure

(LETTER FOR INFORMATIONAL PURPOSES ONLY)

---

cc: Honorable David S. Doty
Jeffrey R. Ansel
Therese Marie Marso
Matthew R. McBride
Thomas Henry Boyd
Justice E. Lindell
Eric John Magnuson
Raphael T. Wallander
Michael H. Schaalman
O. Thomas Armstrong

District Court/Agency Case Number(s): CIV 01-649 DSD/SRN